UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MICHAEL MARTINDALE, JACOB H. BROOKS,
AND DAVID K. MARSHALL,

                              Plaintiffs,          07-CV-6517

                    v.                             **DECISION
                                                   and ORDER**

KEITH GLEASMAN, MORTON POLSTER,
TORVEC, INC., AND ICE SURFACE
DEVELOPMENT, INC.,

                              Defendants.
_____

## INTRODUCTION

        Plaintiffs Michael Martindale ("Martindale"), Jacob H. Brooks

("Brooks") and David K. Marshall ("Marshall") (collectively

"plaintiffs") allege four causes of action in their Complaint. The

first cause of action asserts a shareholder derivative action under

New York Business Corporation Law § 720 against defendants Keith

Gleasman ("Gleasman"), Morton Polster ("Polster") (together

referred to as "G-P defendants"), and Torvec, Inc. ("Torvec")

(collectively "defendants"). The second allegation sounds in breach

of common law fiduciary duty owed to defendant Ice Surface

Development, Inc. ("ISDI") and its shareholders. It is also

asserted derivatively against Gleasman, Polster and Torvec.

Further, the third cause of action, which is alleged directly

against Gleasman, Polster and Torvec sounds in breach of fiduciary

duty based upon plaintiffs' alleged status as creditors of ISDI.

Finally, the fourth cause of action asserts a direct claim solely

against Torvec for tortious interference with plaintiffs' employment contracts.

Defendants Torvec, ISDI, Gleasman and Polster move to dismiss plaintiffs' complaint against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, to stay the remaining portions of this action insofar as they are dependent upon the resolution of a related arbitration proceeding and plaintiffs' status as creditors of ISDI. Plaintiffs opposed the motion to dismiss and/or stay and filed a cross-motion for a preliminary injunction requesting that the Court enter an order restraining Torvec from dissipating or transferring monies received from Ice Engineering, LLC ("Ice Engineering") pursuant to ISDI's sale of the Dartmouth License to Ice Engineering.

For the reasons set forth below, the defendants' motions to dismiss are granted and plaintiffs' cross-motion for preliminary injunction is denied as moot.

## BACKGROUND

### I.   Defendants Torvec, ISDI, Gleasman and Polster and Plaintiffs Martindale, Brooks and Marshall

Torvec is a publicly owned developmental-stage automotive technology company based in Rochester, New York.[1] Gleasman and Polster are officers and shareholders of both Torvec and ISDI. Moreover, Torvec is the majority shareholder of ISDI. Torvec

---

[1]Torvec was organized in 1996 and its mission is the creation and maximation of shareholder value through the commercialization of its Full Terrain Vehicle ('FTV"). The FTV incorporates the key patented technologies contained in Torvec's product portfolio.

acquired ISDI on November 20, 2000 from Utek Corporation of Plant City, Florida. As a result of this transaction, Torvec acquired a twenty-year exclusive, worldwide license granted by the Trustees of Dartmouth College for land-based motorized and non-motorized applications to a novel ice adhesion modification system which was developed by Professor Victor Petrenko at Dartmouth College (the "Dartmouth License"). See Complaint, ¶22. As Torvec's subsidiary, ISDI was to develop Professor Petrenko's novel ice adhesion modification system. Specifically, ISDI was to develop technology allowing for the rapid de-icing of vehicles. Accordingly, the principal asset of ISDI was the Dartmouth License. Plaintiffs are all former officers and current minority shareholders of ISDI. See id., ¶10. At all relevant times including through June 2007, Martindale, Brooks and Marshall were directors of ISDI and controlled ISDI's Board of Directors, which meant they controlled ISDI.

## II.  Plaintiffs' Employment Agreements with ISDI

Plaintiffs executed Employment Agreements with ISDI dated April 1, 2002. See Complaint, ¶¶14-16. According to the Complaint, as of 2002, ISDI failed to pay plaintiffs compensation amounting to $480,000, which was allegedly due under the Employment Agreements.[2] See id., ¶18. As a result, in October 2002, ISDI, Torvec, members

---

[2]Martindale as CEO and Brooks as COO were to receive annual equivalent base salaries of $260,000 for the remainder of 2002, and base salaries of $280,000 for 2003 and $300,000 for 2004. Marshall as Vice President of Manufacturing was to receive an annual equivalent base salary of $160,000 for the remainder of 2002, base salary of $190,000 for 2003 and $220,000 for 2004.

of Torvec's Board of Directors and plaintiffs executed a Memorandum of Understanding regarding Third Quarter Financials ("MOU") and Individual Amendments ("Amendment No. 1") wherein plaintiffs agreed to contribute $480,000 in compensation as capital to ISDI. In addition, plaintiffs agreed to forgo future compensation under their Employment Agreements "until such time as ISDI's Board of Directors determined that ISDI had the requisite funds to pay such amounts." See id., ¶20. Plaintiffs allege that they continued their employment and provided services to ISDI under the Employment Agreements even though they did not receive any salary, bonuses or benefits to which they were entitled. Plaintiffs assert that the unpaid compensation owed to them totaled, in the aggregate, $1,405,000, which included plaintiffs' $480,000 capital contributions to ISDI. See id., ¶21.

### III. **The Liquidation of ISDI**

In December 2006, ISDI and Torvec commenced discussions with Ice Engineering concerning Ice Engineering's acquisition of the Dartmouth License. See Complaint, ¶23. According to the Complaint, Ice Engineering was willing to pay $3.5 million for the License and both ISDI and Torvec became aware of this fact. See id., ¶24. In the Spring of 2007, ISDI designed a Liquidation Plan and notified its shareholders. A "Notice of Special Meeting of the Shareholders of Ice Surface Development" ("Notice of Special Meeting") was mailed to plaintiffs on May 26, 2007, which explained that the shareholders would "consider and vote upon a Plan of Liquidation

and Dissolution" on June 7, 2007[.]" Attached to the Notice of Special Meeting was a copy of the Liquidation Plan for each shareholder, including plaintiffs to review in advance of the June 7 meeting and a form of proxy whereby each of the plaintiffs could approve or disapprove the proposed Liquidation Plan.

The terms of the Liquidation Plan provided for an assignment of the Dartmouth License to Ice Engineering in exchange for a royalty equal to 5% of the gross revenues generated by the commercialization of the ice adhesion technology. In addition, Ice Engineering would reimburse Torvec for a portion of the costs paid by Torvec for the acquisition and maintenance of the Dartmouth License and the development and marketing of the technology. Further, upon assignment of the Dartmouth License, ISDI would liquidate and dissolve, transferring to each ISDI shareholder his/her proportionate share of the right to receive royalty payments from Ice Engineering. Plaintiffs contend that the value of the consideration given by ISDI in the transaction was far in excess of the value of the consideration given by Ice Engineering. Plaintiffs argue that despite Ice Engineering's willingness to pay $3.5 million for the Dartmouth License, ISDI would not receive any cash in the deal, instead ISDI received only the 5% royalty payments. See Complaint, ¶¶25-27.

On June 4, 2007, Torvec received an e-mail from the plaintiffs stating in pertinent part that plaintiffs "are in agreement with the main elements of the proposal and think this may have a

reasonable chance to create value for our joint investments. We do not want to hold up the process, but would like you to consider addressing some unfinished business as follows." Plaintiffs then requested to be reimbursed for any unpaid compensation under their respective Employment Agreements.[3] In response to plaintiffs' request, as described in the June 7 Shareholder Meeting Minutes, ISDI agreed to "increase Plaintiffs' record ownership interest in ISDI" thereby entitling plaintiffs to "a greater share of the 5% royalty" to be paid by Ice Engineering in exchange for assignment of the Dartmouth License.[4] There were no further communications between plaintiffs, ISDI and/or Torvec during the June 7, 2007 meeting. Despite knowledge of the shareholder meeting on June 7, 2007, none of the plaintiffs attended and none of them submitted a proxy vote either in favor or opposing the Liquidation Plan. On June 8, 2007, plaintiffs sent an e-mail to ISDI and confirmed that they "simply expect to participate in the royalty interest and the cash portion of the transaction on a proportionate basis." See Declaration of Philip G. Spellane ("Spellane Decl."), Ex. D.

---

[3] Plaintiffs asserted that the "unpaid wages" owed to them from the fourth quarter of 2002 to the end of 2003 amounted to $925,000. In addition, they indicated their belief that the unpaid wages should be treated in the same category as the $5 million in funds that Torvec had expended and a portion of which was to be reimbursed by Dr. Petrenko as part of the proposed transaction as disclosed in the Plan.

[4] The shareholders of ISDI ultimately determined that a fair method of resolving plaintiffs' asserted claims for alleged "back wages" (including $480,000 contributed as capital and the alleged $925,000 accumulated during the period up to 2003) was to convert the same, as permitted by the terms of the Employment Agreement into additional shares of ISDI common stock. According to defendants, as a result of the conversion of plaintiffs' alleged claims into additional ISDI shares as permitted by the terms of the Employments Agreements, plaintiffs, in the aggregate were to receive 42% of such future royalty stream in cash instead of only 27% per the original distribution.

IV.  **Arbitration**

On July 13, 2007, the plaintiffs, as petitioners, commenced a special proceeding in the Supreme Court of the State of New York, Monroe County against ISDI and Torvec seeking, among other things, to enjoin ISDI and Torvec from selling, assigning, transferring or otherwise alienating any of ISDI's assets and from taking any other action to dissolve or liquidate ISDI pending the resolution of plaintiffs' claims in arbitration against ISDI. Both ISDI and Torvec opposed that application. On or about September 12, 2007, Monroe County Supreme Court Justice Thomas A. Stander issued an order preliminarily enjoining ISDI from selling, assigning, transferring or otherwise alienating any of its assets and from taking any action to dissolve or liquidate, pending the resolution of plaintiffs' claims against ISDI in arbitration, provided that such arbitration be commenced within thirty days of the date of the Supreme Court's Order. Judge Stander also denied plaintiffs' claims for injunctive relief to restrain the transfer of the Dartmouth License previously owned by ISDI.

On October 8, 2007, plaintiffs filed a Demand for Arbitration with the American Arbitration Association ("AAA"). In their demand, they claim ISDI breached their Employment Agreements "by failing to pay salaries due and owing for the years 2002-2004." The arbitration proceeding is pending in Monroe County, New York and is scheduled to be heard on July 15-17, 2008. Even though the

arbitration proceeding is still pending, plaintiffs commenced this action in Federal Court on October 19, 2007.

## DISCUSSION

### I.  Motions to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed.R.Civ.P. 8(a). Specific facts are not necessary and the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" See Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Under Rule 12(b)(6), a plaintiff's complaint will be dismissed if it fails to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. See Bell Atl. Corp., 127 S.Ct. at 1965 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. See Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to

dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

In ruling on a motion to dismiss, the court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." See Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985) (citing Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir.1984)). Therefore, after interpreting the complaint in favor of the plaintiff, if it is determined that the plaintiff has failed to allege a set of facts which, if proven to be true, would entitle him to relief, the complaint will be dismissed. See Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d. Cir.1993), cert. denied, 513 U.S. 1121 (1994); Sworn v. Western New York Children's Psychiatric Ctr., 269 F.Supp.2d 152, 155 (W.D.N.Y.2003) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

On a Rule 12(b)(6) motion, courts may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed ... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." See Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir.2000) (citations omitted).

## II.   **Waiver and Estoppel of Plaintiffs' Claims**

Defendants' argue that plaintiffs took several actions that effectively waived their rights by not only failing to oppose the adoption of the Liquidation Plan, but in fact consented to it. Defendants rely on the June 4, 2007 e-mail sent by plaintiffs after the Notice of Special Meeting was mailed and the subsequent adoption of the Liquidation Plan, which states in pertinent part that plaintiffs "are in agreement with the main elements of the proposal and think this may have a reasonable chance to create value for our joint investments[.]" Although the e-mail goes on to discuss the plaintiffs' desire to have their "unpaid wages" treated in the same category as Torvec's $5 million expenditure to acquire and maintain the Dartmouth License, defendants argue that plaintiffs made no objection to the value of the consideration to be received by ISDI from Ice Engineering in exchange for the Dartmouth License, based on 5% of future royalties. Accordingly, defendants argue that plaintiffs' assertions that there was some breach of fiduciary duty resulting from ISDI's sale of the Dartmouth License "for substantially less than its true value" is refuted by their own acceptance. Defendants claim that based on the e-mail exchanges and documents sent, plaintiffs were fully aware of the value to be received in exchange for the Dartmouth License and unequivocally approved of that exchange.

Furthermore, defendants claim that even after being informed of ISDI's decision not to treat plaintiffs' claim for "unpaid

compensation" in the same category as Torvec's $5 million expenditure to acquire and maintain the Dartmouth License, plaintiffs still did not appear at the June 7, 2007 special meeting of the shareholders, nor did they vote their shares in opposition to the adoption of the Plan, or voice their objection to the adoption of the Plan in any way. Plaintiffs argue that the notice mailed out on May 26, 2007 did not disclose that Torvec would be receiving $3.5 million in connection with the Liquidation Plan. Rather, the notice indicated only that "Torvec would have to be at least partially reimbursed for its costs." According to plaintiffs, this communication is crucial because it demonstrates that plaintiffs were not aware and could not have known that Ice Engineering in fact agreed to pay $3.5 million in cash in connection with the transaction. Notwithstanding this information, plaintiffs argue that the pleadings and documents show that they did object to being "shut out" of the cash portion of the transaction, even before they became aware of the full extent of defendants' actions. See Pls. Memo. at 10.

The Court notes the general principle that a shareholder who participated in the challenged activity or "did not oppose the challenged actions" is estopped and "may not subsequently challenge its legality in a derivative suit." See Pinnacle Consultants, Ltd. v. Leucadia Nat. Corp., 94 N.Y.2d 426, 433 (2000); see also Diamond v. Diamond, 307 N.Y. 263, 266 (1954); Blake v. Blake, 225 A.D.2d 337 (1st Dept. 1996) (plaintiff in shareholder derivative action

was "estopped personally from complaining about the transaction, in light of his knowledge of and acquiescence to the sale"); <u>Winter v. Bernstein</u>, 149 Misc.2d 1017, 1020 (N.Y.Sup.1991), affd as mod on other grounds 177 A.D.2d 452 (1991)("A shareholder is estopped to challenge a corporate policy which he or she affirmatively approved, or of which the shareholder had knowledge but to which no objection was interposed"). Accordingly, the law is clear that a shareholder is estopped from challenging, either individually or through a derivative action, any corporate policy which he approved or which the shareholder had knowledge but to which no objection was put forth. See <u>Diamond</u>, 307 N.Y. at 266; <u>see also</u> <u>Jacobson v. VanRhyn</u>, 127 A.D.2d 743, 744 (2d Dept. 1987) (director and shareholder waved any right to challenge corporation action where he "abstained from voting" upon that action).

As to the issue of waiver, the Court agrees with the defendants' arguments that plaintiffs' claims concerning their objections to the relevant components of the Liquidation Plan,[5] were waived by their failure to object to the Liquidation Plan, and their clear approval and "agreement with the main elements" of the Liquidation Plan. See <u>Travellers Int'l AG & Windsor, Inc. v. Trans World Airlines, Inc.</u>, 722 F.Supp. 1087, 1098 (S.D.N.Y. 1989), aff'd. 41 F.3d 1570 (2d Cir. 1994) ("Waiver is the intentional relinquishment of a known right ... [which] unlike equitable estoppel, does not require a showing of detriment by a party

---

[5]Plaintiffs claim to have objected to their exclusion from the cash portion of the Liquidation Plan and that their ignorance of the specific dollar amount of $3.5 million excuses their failure to act.

claiming to have been misled."); see also Winter, 149 Misc.2d at 1020. Here, it is clear that plaintiffs never objected to the value of the consideration that was to be received by ISDI under the Liquidation, which was 5% of future royalties. A review of the e-mails exchanged between the parties prior to the June 7, 2007 shareholder meeting shows that plaintiffs indicated a desire to participate in the cash portion of the Liquidation Plan as individuals and not as shareholders of ISDI or on behalf of ISDI. The plaintiffs never objected to the adoption of the Liquidation Plan either on behalf of ISDI or as ISDI shareholders.

Three days before the June 7 shareholder meeting, plaintiffs informed defendants by e-mail that "[we] are in agreement with the main elements of the proposal and think this may have a reasonable chance to create value for our joint investments. We do not want to hold up the process, but would like you to consider addressing some unfinished business." Not only were plaintiff in agreement with the Liquidation Plan, they explicitly indicated that they had no intention of "holding up the process" because the assignment of the Dartmouth License to Ice Engineering had a "reasonable chance to create value for [their] joint investment." By e-mail dated June 7, 2007, plaintiffs were advised that the Liquidation Plan involved, not only a 5% royalty to be paid by Ice Engineering, but also a reimbursement to Torvec for certain out of pocket costs. Despite the e-mail exchange and having full knowledge of the Liquidation Plan, none of the plaintiffs attended the June 7, 2007 shareholder

meeting presumably because their interests were satisfied. Further, by e-mail dated June 8, 2007, a day after the shareholder meeting, plaintiffs confirmed their expectation to be treated in the same way as the major shareholders stating "[a]s shareholders we simply expect to participate in the royalty interest and the cash portion of the transaction on a proportionate basis."

It is undisputed that each plaintiff received a copy of the Liquidation Plan, the notice of the June 7, 2007 shareholder meeting and were provided with the opportunity to vote in favor or in opposition to the Liquidation Plan. However, none of the plaintiffs attended the June 7, 2007 shareholder meeting, nor did any of them exercise their right to vote by proxy. Plaintiffs' only input prior to the vote was their June 4 e-mail in which they confirmed their "agreement with the main elements" of the Plan, including reimbursement to Torvec for a portion of the costs paid by Torvec for the acquisition and maintenance of the Dartmouth License. Moreover, plaintiffs were aware that ISDI would not be receiving a lump sum cash payment, but instead future royalties.

### III. <u>The First and Second Causes of Action are Barred Under BCL §623</u>.

Plaintiffs allege a shareholder derivative claim under Business Corporation Law ("BCL") §720 on behalf of ISDI in the first cause of action and a common law breach of duty claim on behalf of ISDI in the second cause of action. BCL §623 recognizes a shareholder's right to object to corporate action and establishes procedures for a dissenting shareholder to elect and demand payment

of the fair value of his or her shares. If the corporation fails to make a written offer to each electing shareholder to pay for his or her shares at a specified price that the corporation considers fair, or if any dissenting shareholder or shareholders disagree with the price offered, a special proceeding may be instituted in state court to determine the rights of the dissenting shareholders and to fix the fair value of their shares. See id. § 623(g), (h). To the extent that plaintiffs had the right to dissent and seek appraisal under BCL §623, it was their exclusive remedy and they failed to avail themselves of this remedy, thereby barring the first and second causes of action. See Norte & Co. v. New York & Harlem Railroad Co., 222 A.D.2d 357, 358 (1st Dept. 1995), citing Schloss Assocs. v. Arkwin Indus., 61 N.Y.2d 700 (1984),[6] reversed on dissenting opn., 90 A.D.2d 149 (2d Dept. 1982) ("The Court of Appeals has squarely held that where the appraisal proceeding is available and merely not exercised, the exclusivity [of BCL §623] applies.")

BCL § 623(k) provides, in pertinent part:

The enforcement by a shareholder of his right to receive payment for his shares in the manner provided herein shall exclude the enforcement by such shareholder of any other right to which he might otherwise be entitled by

---

[6]In its decision in Schloss Assoc., the New York Court of Appeals reversed the lower court's denial of a motion to dismiss the minority shareholders' complaint which sought appraisal pursuant to BCL §623. See 61 N.Y.2d at 703. That complaint contained allegations of self-dealing by the majority shareholders. The basis for the Court of Appeals' decision was the dissenting opinion of Justice Mangano in the case when it was previously decided by the Appellate Division. See id. "There must be a request for equitable relief which, in fact, must be the primary relief sought. Money damages are only available, if at all, as ancillary or incidental to such equitable relief." See Schloss Assoc., 90 A.D.2d at 159 (Mangano, J., dissenting); see also Breed, 54 N.Y.2d at 87 ("any monetary recovery, if available at all, can only be ancillary to a grant of some form of equitable relief").

virtue of share ownership, ... except that this section shall not exclude the right of such shareholder to bring or maintain an appropriate action to obtain relief on the ground that such corporate action will be or is unlawful or fraudulent *as to him*. (Emphasis added)

To qualify for the exclusivity exception outlined in BCL §623(k), "it is not merely enough to plead a cause of action over which equity would take jurisdiction, e.g., one based on constructive fraud for breach of fiduciary duty," the primary relief sought must be equitable in nature. See <u>Schloss Assocs.</u>, 90 A.D.2d at 158-159. In addition, derivative claims brought by shareholders on behalf of the corporation, and not in their individual capacities, do not fall under the exception to the exclusivity rule in §623(k). <u>See</u> <u>Norte & Co.</u>, 222 A.D.2d at 358; <u>see</u> <u>also</u> <u>Breed v. Barton</u>, 54 N.Y.2d 82, 86 (1981) ("It is evident from the express language of subdivision (k) that this exception to the general rule of exclusivity of the appraisal remedy permits a shareholder to pursue an appropriate action only in his individual capacity and not as the instigator of a derivative suit.")

Here, none of the plaintiffs exercised their appraisal rights pursuant to BCL §623 and accordingly failed to avail themselves of any remedy under BCL §623. Moreover, both of plaintiffs' shareholder derivative claims request that Torvec "be ordered to pay over to ISDI any funds which Torvec has received or will receive from Ice Engineering pursuant to the 'reimbursement' agreement...." <u>See</u> Complaint ¶¶46, 53. As a result, plaintiffs' claim against defendants for breach of fiduciary duty is derivative

in nature. See Norte & Co., 222 A.D.2d at 358; see also Abrams v. Donati, 66 N.Y.2d 951, 953 (1985) ("[A]llegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually.") Thus, plaintiffs derivative claims are barred by the statute as they are asserted on behalf of ISDI and not on behalf of plaintiffs in their individual capacities.

Plaintiffs argue that they have alleged sufficient facts as to have satisfied the First and Second Causes of action "as to them." See Pls. Memo at 15-16. However, the only equitable relief requested in the Complaint is on behalf of ISDI. See Complaint, ¶¶36, 43, 46, 51, 53. To the extent that relief as to the plaintiffs individually is sought, it is strictly monetary in nature, that is, plaintiffs rely upon the alleged breach of their Employment Agreements to satisfy the "as to them" requirement of BCL §623(k). See Pls. Memo at 15. However, no such allegation appears in the First or Second Causes of Action. See Complaint, ¶¶38-55. Furthermore, plaintiffs rely on Beard v. Ames, 96 A.D.2d 119 (4th Dept. 1983) to support their claim. However, the Beard case is distinguishable since it involved the attorney-client privilege issue in the "context of an equitable action brought by shareholders against a corporation." See id. at 120. In that case, the plaintiffs were dissenting shareholders who started an action to rescind a merger between two corporations. Unlike the plaintiffs

here, the <u>Beard</u> plaintiffs began a judicial appraisal action under BCL §623 and were not simply seeking to circumvent that statute's exclusivity requirement. In this case, the only remedies that plaintiffs seek "as to them" are compensatory damages. Therefore, the first and second causes of action must be dismissed for this reason as well, since plaintiffs do not fall within the "equitable action" exception to the exclusivity of BCL §623.

### IV.   **The Third Cause of Action**

Plaintiffs' Third Cause of Action alleges a claim for breach of common law fiduciary duty owed to plaintiffs as creditors of ISDI. <u>See</u> Complaint, ¶¶56-63.[7] In support of plaintiffs' claim to creditor status, plaintiffs contend that the adoption of the Liquidation Plan  amounts to a forfeiture of their wages in violation of public policy. <u>See</u> Pls. Memo at 13. However, no forfeiture has occurred in this situation since plaintiffs are merely being compensated by different means. Instead of cash, plaintiffs' "unpaid wages" are to be paid in additional share ownership of ISDI stock which were immediately converted into a right to receive an increased percentage of future royalty payments. Such a payment structure is pursuant to the express terms

---

[7]Although the Third Cause of Action is allegedly based solely upon plaintiffs' claimed creditor status, their waiver and consent to the adoption of the Liquidation Plan is equally applicable. As previously discussed, plaintiffs did not object to ISDI being excluded from the cash portion of the transaction and only receiving 5% of future royalties. At most, plaintiffs expressed a desire to participate in the cash portion of the transaction as individuals, i.e. seeking to have their individual interests served and not those of ISDI.

of the plaintiffs' Employment Agreements.[8] Accordingly, plaintiffs were compensated pursuant to the terms of the Employment Agreements and no forfeiture or breach occurred. Thus, because the express terms of the Employment Agreements permit the very action that plaintiffs now challenge, plaintiffs' Third Cause of Action is dismissed.[9]

## V.    The Fourth Cause of Action

## A.    Tortious Interference With Contract

In the Fourth Cause of Action, plaintiffs allege that Torvec tortiously interfered with their contractual relations, i.e. Employment Agreements with ISDI by causing ISDI to breach the Employment Agreements. In order to establish tortious interference under New York law, plaintiffs must show: (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" See Kirch v. Liberty Media Corp, 449 F.3d 388, 401 (2nd Cir. 2006)(quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424, (1996)); Albert v. Loksen,

---

[8] Section 3.5 of the Employment Agreements state "compensation owed, accrued and/or to be paid under the Agreement as herein set forth shall, in the discretion of the Board of Directors, be paid either in shares of the Company's capital stock, in cash or in a combination of both stock and cash at such time(s) as may be determined by the Board."

[9] Defendants argue that if plaintiffs' Third Cause of Action is not dismissed outright, it should be stayed pending resolution of the arbitration proceedings. The Court need not address the stay issue since it has dismissed the plaintiffs' Third Cause of Action.

239 F.3d 256, 274 (2d Cir. 2001); Pelosi v. Schwab Capital Markets, L.P., 462 F.Supp.2d 503, 516 (S.D.N.Y. 2006); see also NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 87 N.Y.2d 614, 620-21 (1996). There is no dispute that a valid agreement existed between plaintiffs and ISDI and that Torvec had knowledge of the Employment Agreement. However, plaintiffs have failed to allege that Torvec intentionally procured the breach of the Employment Agreements held with plaintiffs by ISDI, without justification. See Kirch, 449 F.3d at 401.

The express terms of the Employment Agreements allowed the Board of ISDI to compensate plaintiffs, in its sole discretion, with either cash or stock. In addition, the amendment to the Employment Agreements made it permissible that the Board of ISDI delay payment of plaintiffs' wages to when, in its sole discretion, ISDI acquired the required funds to pay plaintiffs such amounts. Plaintiffs were paid amounts owed to them by receiving the value of the ISDI stock shares in an amount equal to their claimed "unpaid wages." Accordingly, there could be no breach and no tortious interference of a contractual relationship. Thus, plaintiffs have failed to state a cause of action for tortious interference with contract. Accordingly, I grant defendants' motion to dismiss the Fourth Cause of Action of plaintiffs' Complaint.[10]

---

[10]Defendants argue that if plaintiffs' Fourth Cause of Action is not dismissed outright, it should be stayed pending resolution of the arbitration proceedings. The Court need not address the stay issue since it has dismissed the plaintiffs' Fourth Cause of Action.

**B.   Covenant of Good Faith and Fair Dealing**

In New York, implicit in every contract is a promise of good faith and fair dealing, which is breached when a party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under the agreement. See Skillgame, LLC v. Brody, 1 A.D.3d 247 (1st Dept. 2003); see also 511 W. 232nd Owners Corp. V. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002) ("all contracts imply a covenant of good faith and fair dealing in the course of performance.") (citation omitted). The Court of Appeals has held that "no obligation can be implied ... which would be inconsistent with other terms of the contractual relationship." See Horn v. New York Times, 100 N.Y.2d 85, 92 (2003). A defendant does not breach its duty of good faith and fair dealing by exercising its rights under the contract. See DCMR v. Trident Precision Mfg., 317 F.Supp.2d 220, 226 (W.D.N.Y. 2004); Assoc. Capital Serv. Corp. of New Jersey v. Fairway Private Cars, Inc., 590 F.Supp. 10, 16 (S.D.N.Y. 1982).

In the instant case, Torvec's alleged tortious interference with plaintiffs' Employment Agreements arises not from ISDI's breach of those agreements, rather, from its compliance with the expressed terms with those Employment Agreements. Plaintiffs are alleging a breach of the covenant of good faith and fair dealing to try to create rights under the Employment Agreements to which they were not entitled. However, plaintiffs' cause of action fails since

the implied covenant of good faith and fair dealing will not imply an obligation that is not consistent with the express terms of the Employment Agreements. Furthermore, as previously discussed, contrary to plaintiffs' contentions no forfeiture occurred. Plaintiffs received the value and benefits of ownership of the permitted ISDI stock-based compensation when they were allotted an increased proportionate share of future royalty payments. The express terms of the Employment Agreements made it permissible for the plaintiffs to be compensated either in cash or in stock and plaintiffs received the value of ISDI stock shares in an amount equal to their alleged "unpaid wages." Thus, the covenant of good faith and fair dealing cannot convert ISDI's compliance with the express terms of the Employment Agreements into a breach of those very same agreements.

## VI. **Preliminary Injunction**

Plaintiffs filed a cross-motion for a preliminary injunction requesting that the Court enter an order restraining Torvec from dissipating or transferring monies received from Ice Engineering pursuant to ISDI's sale of the Dartmouth License to Ice Engineering. Plaintiffs contend that Torvec is "technically insolvent" since its liabilities grossly exceeds its assets. Defendants oppose the cross-motion arguing that plaintiffs have neither a legal nor equitable interest or lien with respect to any specific fund of money at issue in this case and plaintiffs have failed to demonstrate that Torvec is insolvent or is likely to be

insolvent at the conclusion of this litigation. For the reasons stated in this Decision and Order, I determine that plaintiffs cross-motion for preliminary injunction is rendered moot since plaintiffs' causes of action in their Complaint have been dismissed.

## CONCLUSION

For the reasons set forth above, defendants Torvec, ISDI, Gleasman and Polster's motions to dismiss plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) are granted. Plaintiffs' Complaint is dismissed with prejudice. Plaintiffs' cross-motion for preliminary injunction is denied as moot.

**ALL OF THE ABOVE IS SO ORDERED.**

  s/Michael A. Telesca  
MICHAEL A. TELESCA  
United States District Judge

Dated:    Rochester, New York  
          June 27, 2008